UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TEMPUR SEALY INTERNATIONAL, INC., et al., | ) ) ) | |
| | ) | Civil Action No. 5: 17-222-DCR |
| Plaintiffs, | ) ) | |
| V. | ) ) | |
| | ) | **MEMORANDUM OPINION** |
| RIO HOME FASHIONS, INC., et al., | ) ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendants' motion to dismiss the plaintiffs' Amended Complaint pursuant to Rules 12(b)(6) and (7) of the Federal Rules of Civil Procedure. [Record No. 19] For the reasons that follow, the Court will deny the defendants' motion.

**I.**

Plaintiffs Tempur Sealy International, Inc., Tempur-Pedic Management, LLC, Tempur-Pedic North America, LLC, and Dan Foam APS (collectively, "Tempur Sealy") is a leader in the bedding industry involved in research, development, manufacturing, supply, and sale of premium mattresses, mattress toppers, pillow, and other comfort products. [Record No. 15, ¶¶ 13-14] Tempur Sealy owns a number of trademarks and has registered such marks in the United States Patent and Trademark Office. *Id.* at ¶ 17. Defendant Rio Home Fashions, Inc. ("Rio") is a California corporation that advertises and sells pillows and mattress toppers in the

United States. *Id*. at ¶¶ 10, 12. Defendant Glen Sun serves as the President, Chief Executive Officer, Secretary, Chief Financial Officer, and sole director of Rio. *Id*. at ¶ 11.

This is not the first time these parties have met. Tempur Sealy and Rio entered into a written Settlement Agreement on April 18, 2015, in which Rio acknowledged that it had engaged in the sale of pillows bearing the TEMPUR trademark and that such activities were unlawful. *Id*. at ¶ 33. In additional to agreeing to refrain from selling products bearing the TEMPUR mark or any confusingly similar mark, Rio agreed to refrain from advertising any products using the TEMPUR or confusingly similar mark. *Id*. at ¶ 34.

Approximately two years later, Tempur Sealy discovered that non-genuine products were being advertised and sold on the internet using Tempur Sealy trademarks. *Id*. at ¶ 37. Tempur Sealy purchased several of the non-genuine products being advertised with Tempur Sealy marks and inspected them upon delivery. *Id*. at ¶¶ 41, 43. Upon inspection, Tempur Sealy confirmed the product law tags identified Rio as the distributor. *Id*. at ¶ 43. Tempur Sealy alleges that the infringing product names and product listings in these discovered advertisements were created by Rio and submitted to various third-party websites for use in advertising and selling Rio products. *Id*. Tempur Sealy also discovered advertisements for non-genuine products using the Tempur Sealy marks on the interned using search engines. *Id*. at ¶ 40. Tempur Sealy, through outside counsel, sent a letter to Rio indicating that it was in breach of the Settlement Agreement. *Id*. at ¶ 51.

Tempur Sealy filed its initial Complaint on May 17, 2017. [Record No. 1] It then filed an Amended Complaint on July 25, 2017. [Record No. 15] Tempur Sealy has asserted claims alleging several violation of the Lanham Act, including direct and/or secondary liability for federal trademark infringement (Count I), direct and/or secondary liability for unfair

competition (Count II), direct and/or secondary liability for false advertising (Count III), direct and/or secondary liability for trademark dilution (Count IV), direct and/or secondary liability for trademark counterfeiting (Count V). Additionally, it has asserted a claim alleging trademark infringement and unfair competition under Kentucky law (Count VI). Finally, Tempur Sealy asserted a claim for breach of contract under Kentucky law alleging that Rio breached the Settlement Agreement (Count VII).

## II.

The Court must determine whether the Complaint in issue states a viable claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. It "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a complaint need not contain detailed factual allegations, it must contain more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.

### A. Notice

Rio appears to argue that the entire action should be dismissed because Tempur Sealy did not provide adequate notice and a 10-day opportunity to cure, as the parties agreed in the

Settlement Agreement. [Record No. 19-1, p. 8] The relevant portion of the Settlement Agreement provides as follows:

> In the event Tempur-Pedic believes that Rio has violated the terms of this Agreement, it will provide Rio notice of the alleged breach and an opportunity to cure the breach with ten (10) calendar days of receipt of the notice. The notice will be sent by return receipt mail to Rio at the address shown above. If Rio fails to cure the breach to the full satisfaction of Tempur-Pedic within the ten (10) calendar days, Tempur-Pedic may proceed to seek all available remedies in court including breach of this Agreement and pursuit of liquidated damages specified below.

[Record No. 15-8, ¶ 8]

Tempur Sealy alleges that it "provided actual notice to [Rio] if the unlawful activities and breach of contract by written correspondence detailing the specific conduct and the Defendants' material breach of the Settlement Agreement." [Record No. 15, ¶ 51] But Rio contends that this notice was inadequate. [Record No. 19-1, p. 8] However, as alleged, "[a]lthough Defendants acknowledged receipt of Plaintiffs' written notice and were provided a reasonable opportunity to cure the breach, Defendants denied responsibility for the conduct," and allegedly continued breaching. *Id*. at ¶¶ 51, 118. Rio admits that in response to the notice it "informed counsel for Tempur-Pedic that it had no control over or access to third-party websites or search results within those websites." [Record No. 19-1, pp. 11-12] While Rio may not be content with the lack of communication with Tempur Sealy after receipt of the notice, taking the factual allegations as true and drawing reasonable inferences in favor of the non-moving party, Tempur Sealy has stated a plausible claim for relief for breach of contract and trademark infringement.

### B. Direct Trademark Infringement Claim

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). The third element (i.e., likely to cause confusion), is often the "[t]he touchstone of liability under § 1114." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

"Whether a likelihood of confusion exists 'is a mixed question of fact and law,' but the ultimate determination of 'whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion.'" *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 731 (6th Cir. 2012) (quoting *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630–31 (6th Cir. 2002)). And in determining whether a likelihood of confusion exists, the Court considers: (i) the strength of the plaintiff's mark; (ii) the relatedness of the goods or services offered by the plaintiff and the defendant; (iii) the similarity of the marks; (iv) any evidence of actual confusion; (v) the marketing channels used by the parties; (vi) the probable degree of purchaser care and sophistication; (vii) the defendant's intent in selecting its mark; and (viii) the likelihood of either party expanding its product line using the marks. *Id*. The ultimate question for a court is "whether relevant costumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Rio seems to argue that, because the product sold did not contain an allegedly infringing mark, no trademark infringement occurred. [Record No. 19-1, p. 14] It further contends that there is no likelihood of confusion because Tempur Sealy does not allege that Rio's website

includes any reference to Tempur Sealy or its trademarks. *Id*. at p. 17. However, these assertions fail to consider the fact that the Tempur Sealy has not alleged that the product contained an infringing mark or that Rio's website advertised using Tempur Sealy marks. Instead, the plaintiffs allege that the advertising of the products on third party sites, while using the Tempur Sealy trademarks, constitutes the infringement. Specifically, Tempur Sealy claims that infringement occurred in the "product names and product listings" being submitted to third-party websites for use. [Record No. 15, ¶ 37] It goes on to allege that Rio provided third party retailers with infringing product information for use in connection with advertising and sale of a non-genuine Tempur Sealy products, which is likely to deceive, mislead, and confuse the relevant public. *See Id*. at ¶¶ 37-50, 63.

At this stage of the litigation, the plaintiff must only state a plausible claim for relief. Tempur Sealy has alleged sufficient factual allegations that allow this Court to draw a reasonable inference of a plausible claim that Rio supplied the infringing product information to the third-party vendors. Further, Tempur Sealy has provided sufficient factual allegations to support the third element of a likelihood of confusion.

C.    **Secondary Liability**

In *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, the Supreme Court recognized contributory liability under the Lanham Act can be imposed where a "manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its products to one whom it knows or has reason to know is engaging in trademark infringement." 456 U.S. 844, 854. Vicarious liability under the Lanham exists when the defendant and the infringer were in a partnership, had authority to bind one another, or exercised joint ownership

or control over the infringing product. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502-03 (6th Cir. 2013) (recognizing vicarious liability in trademark context) (citing *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) and *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

Rio dedicates several pages in its memorandum arguing that Tempur Sealy has not alleged sufficient facts to show that Rio knew, or had reason to know, that third-party websites were listing Rio's products using infringing product information. This argument rests entirely on the idea that Tempur Sealy's notice letter failed to provide Rio adequate notice, which indicates that Rio is contending that it did not know, or should have known, about the alleged infringement. However, as discussed earlier, Tempur Sealy asserts that Rio provided the alleged infringing product listing information to the third-party websites to use in the advertising of Rio products being sold. Thus, Tempur Sealy has easily alleged sufficient facts to support a reasonable inference that Rio continued "to supply its products to one whom it knows or has reason to know is engaging in trademark infringement." *See Inwood*, 456 U.S. at 854.

Further, while Rio argues that Tempur Sealy has not alleged facts that would state a plausible claim for vicarious liability, Tempur Sealy contends that communications between Rio and the third-party websites "provided or confirmed the products to be sold, the price set for each product, and confirmed all other aspects of the distributor/retailer relationship." [Record No. 15, ¶ 57] This, coupled with the factual allegations that Rio provided the alleged infringing product listing information, allows a reasonable inference that Rio and the third parties were acting in a partnership capacity or at the least exercised joint ownership or control over the infringing product. *See Coach*, 717 F.3d at 502-03.

### D. Failure to Join a Party

Rio also argues that Tempur Sealy's failure to join any of the third-party websites as parties to this litigation is fatal and, as such, the claims should be dismissed. Rule 12(b)(7) of the Federal Rules of Civil Procedure requires dismissal of a case "for failure to join a party under Rule 19." In *PaineWebber, Inc. v. Cohen,* 276 F.3d 197 (6th Cir. 2001), the Sixth Circuit established a three-step analysis in determining whether a case should proceed in the absence of a particular party, as set forth in Rule 19 of the Federal Rules of Civil Procedure. The court must first determine whether the absent "person is necessary to the action and should be joined if possible." *Id.* at 200 (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.,* 181 F.3d 759, 763-64 (6th Cir. 1999)). If the court concludes that a party is necessary, it must next determine whether it is subject to personal jurisdiction and can be joined without destroying the basis for subject matter jurisdiction. *Id.* (citing *Keweenaw Bay Indian Cmty. v. Michigan,* 11 F.3d 1341, 1345-46 (6th Cir. 1993)). If the party cannot be joined without destroying jurisdiction, then the court must, in light of the four factors described in Rule 19(b), evaluate whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed. *Id.* (citing *Soberay Mach. & Equip. Co.,* 181 F.3d at 764). But if the court determines at the first step that the absent person is not necessary to the action, no further analysis, and no joinder, is needed. *Yates v. Applied Performance Techs., Inc.,* 209 F.R.D. 143, 148 (S.D. Ohio 2002) (citing *Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am. v. Int'l Union,* 822 F.2d 613, 618 (6th Cir. 1987)).

A party is necessary under Rule 19 if either: (1) in the party's absence, the court cannot accord complete relief among existing parties, Fed. R. Civ. P. 19(a)(1)(A), or (2) if the party claims an interest relating to the subject of the action and disposing of the action in the party's

absence may (i) as a practical matter impair or impede the party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest, Fed. R. Civ. P. 19(a)(1)(B).

Rio argues that the third-party websites are necessary parties because they would have to be apportioned fault if Rio was found secondarily liable for infringement, thus meaning a finding of direct liability on the part of the third-party websites. It alleges that proceeding without the third-party websites would impact their ability to protect their interests. Finally, Rio asserts that proceeding without them, and with a resulting judgment against Rio, would cause it to engage in additional litigation to recover a proportionate share of the judgment. [Record No. 19-1, p. 31] Rio does not explain how a judgment against it would subject it to a substantial risk of incurring multiple or otherwise inconsistent obligations. And While Rio may want the third-party websites parties joined to share in potential liability, "[a] person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." *Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990); *PaineWebber*, 276 F.3d at 204. Rio has failed to raise a Rule 19 issue on the first step of the analysis.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** the defendants' Motion to Dismiss [Record No. 19] is **DENIED.**

This 25th day of January, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge